**REED SMITH LLP**
*Formed in the State of Delaware*
John M. Loalbo
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08543
Attorneys for Defendant CIMID
   Corporation

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| E85, INC., a Delaware Corporation, and INDUSTRIAL TANK BUILDERS LLC, a Delaware limited liability company,<br><br>       Plaintiffs,<br><br>    v.<br><br>CIMID CORPORATION, a New Jersey Corporation,<br><br>       Defendant/Third-Party Plaintiff<br><br>    v.<br><br>BOLD INVESTMENTS, LLC; SIVA VENTURES, LLC; and SIVA VENTURES LTD, NARAYAN KUMAR<br><br>       Third-Party Defendants | Civil Action No.08-cv-04411-FSH-MAS<br><br><br>**DEFENDANT'S ANSWER TO PLAINTIFFS AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS AND THIRD PARTY COMPLAINT** |

Defendant, CIMID Corporation, by way of Answer to the Plaintiffs' Complaint, states that:

### PARTIES

1.    Defendant leaves Plaintiffs to their proofs as to the allegations in Paragraph 1 of the Complaint.

**JURISDICTION AND VENUE**

2.　　　Defendant leaves Plaintiffs to their proofs as to the allegations in Paragraph 2 of the Complaint.

3.　　　Defendant leaves Plaintiffs to their proofs as to the allegations in Paragraph 3 of the Complaint.

**BACKGROUND FACTS**

4.　　　Defendant denies all characterizations of the Agreement as set forth in Paragraph 4 of the Complaint, as the Agreement language is self-evident.

5.　　　Defendant leaves Plaintiffs to their proofs as to the allegations in Paragraph 5 of the Complaint.

6.　　　Defendant denies all characterizations of the Agreement as set forth in Paragraph 6 of the Complaint, as the Agreement language is self-evident.

7.　　　Admitted.

8.　　　Defendant denies all characterizations of the Agreement as set forth in Paragraph 8 of the Complaint, as the Agreement language is self-evident.

9.　　　Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 9 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs' to their proofs.

10.　　　Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 10 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs to their proofs.

11.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 11 of Plaintiffss Complaint, and, therefore, leaves Plaintiff to their proofs.

12.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 12 of the Complaint, as the Agreement language is self-evident.

13.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 13 of the Complaint, as the Agreement language is self-evident.

14.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 14 of the Complaint, as the Agreement language is self-evident.

15.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 15 of the Complaint, as the Agreement language is self-evident.

16.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 16 of the Complaint, as the Agreement language is self-evident.

17.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 17 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs to their proofs.

18.     Denied.

19.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 19 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs to their proofs.

20.     Denied.

21.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 21 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs to their proofs.

22.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 22 of Plaintiffs' Complaint, and, therefore, leaves Plaintiffs to their proofs.

23.     Admitted.

24.     Defendant leaves Plaintiffs to their proofs as to the allegations contained in Paragraph 24 of the Complaint.

25.     Denied.  Although such emails were sent, production was never suspended and Plaintiffs were aware production was not suspended.

26.     Denied.  The allegations in Paragraph 26 of the Complaint are impermissible legal conclusions.

27.     Denied.

28.     Denied.

29.     Denied.  The allegations in Paragraph 29 of the Complaint are impermissible legal conclusions.

30.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 30 of the Complaint.

31.     Denied.

32.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 32 of the Complaint.  To the extent a response is required, the allegations of Paragraph 32 are denied.

33.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 33 of the Complaint.  To the extent a response is required, the allegations of Paragraph 33 are denied.

34.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 34 of the Complaint.  To the extent a response is required, the allegations of Paragraph 34 are denied.

35.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 35 of the Complaint.  To the extent a response is required, the allegations of Paragraph 35 are denied, as Plaintiffs were aware Defendant continued to manufacture in accordance with the Agreement.

36.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 36 of the Complaint.

37.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 37 of the Complaint.

38.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 38 of the Complaint.

39.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 39 of the Complaint.

40.     Defendant admits that Plaintiff e85 had cancelled the Agreement on July 15, 2008.  However, Defendant leaves Plaintiffs to their proofs as to the allegations of the balance of Paragraph 40 of the Complaint.

41.     Defendant leaves Plaintiffs to their proofs as to the allegations of Paragraph 41 of the Complaint.

42.     Defendant leaves Plaintiff to their proofs as to the allegations of Paragraph 42 of the Complaint.  To the extent a response is required, the allegations of Paragraph 42 are denied.

43.     Defendant denies all characterizations of the Agreement as set forth in Paragraph 43 of the Complaint, as the Agreement language is self-evident.

44.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 44 of Plaintiffs Complaint, and, therefore, leaves Plaintiffs to their proofs.

45.     Defendant is without sufficient information to either admit or deny the allegations contained in Paragraph 45 of Plaintiffs Complaint, and, therefore, leaves Plaintiffs to their proofs.

## CAUSE OF ACTION,
### (Breach of Contract)

46.     Defendant repeats and realleges the Answers set forth in all previous paragraphs as if set forth at length herein.

47.     Denied.    The allegations in Paragraph 47 of the Complaint constitute impermissible legal conclusions.

48.     Denied.    The allegations in Paragraph 48 of the Complaint constitute ' impermissible legal conclusions.

49.     Denied.    The allegations in Paragraph 49 of the Complaint constitute impermissible legal conclusions.

**WHEREFORE,** Defendant seeks the entry of Judgment dismissing Plaintiffs' Complaint in its entirety.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs fail to state a cause of action upon which relief may be granted and the answering Defendant reserves the right to move to dismiss the Complaint.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrines of release, waiver, estoppel and laches.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrine of novation.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by all applicable agreements between the parties.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by reason of its failure to perform in accordance with any and all agreements between the parties.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred under the doctrine of unclean hands.

## EIGHT AFFIRMATIVE DEFENSE

While Defendant denies any wrongdoing, should it ultimately be determined that any monies are owed, Defendant claims a right of set-off and recoupment.

## NINTH AFFIRMATIVE DEFENSE

Any and all damages alleged by Plaintiffs are a result of their own actions, conduct and/or omissions.

## TENTH AFFIRMATIVE DEFENSE

To the extent Defendant owed any duty to Plaintiffs at the time of the incidents alleged in the Complaint, such duty was not breached.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to amend their Answer and to assert additional Affirmative Defenses which may be ascertained during the course of discovery in this matter or otherwise.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to join necessary parties in this action under Rule 19.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring the claims asserted in this Complaint.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs claims are barred by the entire controversy doctrine.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Court lacks subject matter jurisdiction.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiffs failed to mitigate thei damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to exhaust required administrative remedies which are a prerequisite to the maintenance of this suit.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant at all times acted in good faith.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendant denies that Plaintiffs are entitled to punitive damages.  To the extent punitive damages are awarded, said damages are limited by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

## COUNTERCLAIMS AND THIRD PARTY COMPLAINT

Defendant CIMID Corporation ("CIMID"), by counsel, states as follows as its counterclaims against Plaintiff e85, Inc. ("e85") and Plaintiff Industrial Tank Builders LLC ("ITB") (collectively, "Plaintiffs"), and as its Third Party Complaint against Bold Investments, LLC ("Bold Investments"), Siva Limited, LLC ("Siva Limited"), Siva Ventures, LTD ("Siva Ventures") and Narayan Kumar.

## PARTIES

1.      At all times relevant to this Counterclaim, Defendant CIMID is a corporation organized and existing under the laws of the State of New Jersey, with its registered office located at 30 Chapin Road, Pine Book New Jersey.

2.      At all times relevant to this Counterclaim, Plaintiff e85 is a corporation organized under the laws of the State of Delaware with its principal place of business located at 123 West 6th Street, Wahoo, Nebraska.

3.     At all times relevant to this Counterclaim, Plaintiff ITB is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 123 West 6th Street, Wahoo, Nebraska.

4.     At all times relevant to this Third Party Complaint, Bold Investments is a corporation organized under the laws of the State of California with its principal place of business located at 508 Midvale Way, Mill Valley, California.

5.     At all times relevant to this Third Party Complaint, Siva Limited is a limited liability company that is doing business at unknown.

6.     At all times relevant to this Third Party Complaint, Siva Ventures. is a company organized under the laws of the Country of India with its principal place of business located at Sterling Tower, 327, Anna Salai, Teynampet, Chennai, India.

7.     At all times relevant to this Third Party Complaint, Narayan Kumar is an individual residing in Chennai, India and whose place of employment is located at Sterling Tower, 327, Anna Salai, Teynampet, Chennai, India.

## FIRST COUNTERCLAIM

### (Breach of Contract)

1.     On or about June 11, 2007, Plaintiff e85 and Defendant CIMID entered into an Equipment Purchase Agreement ("Agreement") (See Exhibit "A" of Plaintiff's Complaint) for Plaintiff e85's purchase of field tank fabrication equipment consisting of component parts, as described in Paragraph 2 of the Agreement.

2.     The payment terms of the Agreement are set forth in Section 7.A, which provide the payment schedule as follows:

The PURCHASE PRICE shall be paid according to the following schedule:

(i)$1,000,000 shall be paid within five (5) business days of actual receipt by BUYER of fully executed duplicate original of this Agreement.  The date of receipt of this payment is the commencement date for the applicable lead times.

(ii)$1,000,000 shall be paid at the mid point of the determined delivery date after inspection of the Equipment in Belgium by BUYER

(iii)$ 1,000,000 shall be paid when EQUIPMENT arrives in Houston, Texas, against receiving document confirming arrival before release for shipment to Wahoo, Nebraska.  Any demurrage charges on account of any delay by the BUYER will be accrued to BUYER.

(iv) $545,000 shall be paid within ten (10) days following the ACCEPTANCE DATE and signing of acceptance form.

3.      Section 7.A is a material provision of the Agreement.

4.      According to Plaintiff e85, on June 18, 2008 Plaintiff paid Defendant $1,000,000, two days after the date set forth in Section 7.A(i) of the Agreement.

5.      Despite Plaintiff e85's breach of the terms of Section 7.A(i) and 7(A)(ii), Defendant continued to deal with Plaintiff e85 in good faith.

6.      On or about December 18, 2007 Plaintiff e85 paid Defendant $500,000, one-half of the amount contemplated under Section 7.A(ii) of the Agreement.

7.      Pursuant to the terms of the Agreement, on or about February 4, 2008, Plaintiff e85 inspected the equipment in Belgium, pursuant to Section 7(A)(ii) of the Agreement.

8.      On February 5, 2008 Defendant sent Plaintiff e85 an email requesting the remaining $500,000 pursuant to Section 7.A(ii) of the Agreement be sent within three days of Defendant's return from the site inspection in Belgium.  Furthermore, the email indicated that any further delays in payment beyond February 11, 2008 would significantly impact the delivery

of the decoiler, and that delivery of the component parts would be held until payment is made, pursuant to Section 7.A(ii).

9.    Defendant responded that payment would not be made until the end of February.

10.    Plaintiff e85's failure to pay the monies owed under Section 7.A(ii) of the Agreement in a timely manner, subsequently resulted in the Defendant reducing manpower for manufacture of the equipment.

11.    Defendant informed Plaintiff e85 on February 14, 2008 that it suspended manufacture of the equipment based upon Plaintiffs failure to pay Defendant in accordance with Section 7.A(ii) of the Agreement, in an effort to effectuate Plaintiff e85's payment, when in fact Defendant continued manufacture in accordance with the Agreement and Plaintiff e85 was aware of Defendant's continued production.

12.    On February 15, 2008 Defendant reiterated the fact that manufacturing was suspended (despite the fact that Defendant continued manufacture with reduced manpower) on the basis that Plaintiff e85 breached its obligation under Sections 7.A(i) and 7.A(ii) of the Agreement, in an effort to ensure Plaintiff e85 fulfilled its payment obligations.

13.    Despite such efforts, almost a month later, payment was still not received.

14.    It was not until March 12, 2008 that Defendant received the remaining half of the payment in the amount of $500,000 in contradiction to Section 7.A(ii) of the Agreement.

15.    Based upon Plaintiff e85's violation of the Agreement, specifically payment under Section 7.A(ii), Defendant made a good faith effort to renegotiate the terms of payment as well as the delivery schedule on the basis that production slowed for approximately six weeks during the time Plaintiff e85's payment under Section 7.A(ii) was deficient.

16.    Furthermore, Defendant indicated to Plaintiff e85 that due to the delay in payment, in violation of the Agreement, Defendant had to recalculate its exposure on the basis that there were currency changes as well as component price changes in the market during the time Plaintiff e85 failed to make the appropriate payment.

17.    Based upon Plaintiff e85's failure to timely pay Defendant, Defendant had an increased exposure, which gave Defendant commercially reasonable concerns that further payment would also be delinquent if paid at all.

18.    As of late March 2008, Plaintiff e85 or its agents learned that 85% of the job, other than the manufacture of the decoiler, as contemplated under the Agreement, was performed by Defendant.

19.    In light of Plaintiff e85's breach of the Agreement by delaying payments, Defendant began a good faith negotiation of new terms which would protect Defendant's exposure to losses based on Plaintiff e85's nonpayment, and also to make a good faith effort to deliver the goods to Plaintiff e85.

20.    Additionally, Defendant offered Plaintiff e85 the opportunity to agree to the delivery of those components already manufactured and to accept a modified delivery date for the decoiler.

21.    In response to Defendant's proposed payment and delivery schedule, Plaintiff e85 responded by indicating that due to the delay (caused by Plaintiff e85's nonpayment) that "we cannot use this equipment for the Wahoo job for which it was originally intended." Plaintiff also requested a reversion to the terms of the Agreement, without acknowledgment of their delayed payment.

22.     In an effort to minimize Defendant's exposure, Defendant also offered Plaintiff e85 to deliver the component parts, but remove the decoiler from the list in an effort to reduce the cost of the order to Plaintiff e85, especially since Plaintiff e85 already indicated the equipment could not be used in Wahoo, Nebraska- the location the equipment was to ship under Section 8.B. of the Agreement.

23.     Defendant also gave Plaintiff e85 the opportunity to receive the decoiler, but only upon an agreement of a payment schedule on the basis that Defendant had concerns about its exposure were it to go full force ahead manufacturing the decoiler without any payment from Plaintiff e85 until the decoiler was received.

24.     On or about May 2, 2008 the parties drafted a new agreement for the terms of the timing for completion of the remaining work, as well as a payment schedule, but the terms were never agreed upon by the parties.

25.     On or about May 8, 2008, Plaintiff e85 sent the proposed draft of the Amendment #1 to the Agreement ("Amendment #1), which would have had the effect of replacing the terms of Section 7.A(iii) and (iv) and extended the time Defendant was required to deliver the equipment.

26.     Negotiations with respect to Amendment #1 began in the beginning of May 2008 and continued until early July 2008 when Defendant received a correspondence from Plaintiff e85's attorney.

27.     During the time of negotiations of Amendment #1, in late June 2008, decoiler manufacture was placed on hold until the parties agreed upon a new payment schedule.

28.     Again in an effort to minimize Defendant's exposure during the course of the negotiation of Amendment #1, and to make a good faith effort to limit Plaintiff e85's further

exposure to damages that would be incurred by Defendant if it was required to store the equipment, Defendant again offered to sever the order, limiting Plaintiff e85's exposure.

29.     Furthermore, in June 2008, Defendant learned that construction of the Wahoo Ethanol LLC, Nebraska plant was without financing, and the forecasted plans for the remaining 9 ethanol plants were suspended also due to a lack of funding.

30.     Learning of these plant suspensions, due to lack of funding, created even greater uncertainty by Defendant in Plaintiff e85's ability to pay the remainder of their obligations under the Agreement, requiring Defendant to seek more security after Plaintiffs initial payment breach.

31.     Defendant specifically learned that Plaintiff e85 suspended construction on its Wahoo ethanol plant where the equipment under the initial Agreement was scheduled to ship.

32.     Despite Plaintiff e85's construction status, Plaintiff e85 demanded completion of the work without an amendment agreed upon by the parties in light of the delay caused by Plaintiff e85's failure to timely make payments under Section 7 of the Agreement and changed European market conditions.

33.     Defendant in a continued good faith effort to resolve this matter offered to ship the completed component parts, except for the decoiler, for three months, from late May through late August.

34.     Not only did Defendant continue its good faith efforts to resolve this matter, but Plaintiff e85 clearly stated on or about July 7, 2008 that Defendant was holding up its end of the bargain, when it indicated "Since March CIMID has been working on completion of the purchase order."

35.     Furthermore, early in July 2008 Plaintiff e85 inspected the progress of the manufacture of the equipment in Belgium and was aware that Defendant had fulfilled its

obligations to complete the component parts, except the decoiler, under the Agreement and that the equipment was near ready to ship on or about July 8, 2008.

36.    Despite Plaintiff e85's knowledge that Defendant had completed its obligations to complete the order, except for the decoiler (based upon Plaintiff e85's failure to make timely payments), Plaintiff e85 cancelled the Agreement on July 15, 2008.

37.    By way of correspondence dated September 12, 2008, Defendant's counsel informed Plaintiff e85's counsel that Defendant had received Plaintiff e85's July 15, 2008 cancellation of the agreement, and that Defendant sought to enforce the termination provision, Section 18, of the Agreement.

38.    The termination provision in Section 18 of the Agreement provides as follows:

TERMINATION

Without limiting any rights or remedies which BUYER may have in the event of any default or failure of performance by SELLER, BUYER shall have the right, upon ten (10) days' prior written notice to SELLER, to terminate this Agreement at any time and without cause prior to complete delivery.  Such termination shall be without any obligation or liability to the SELLER other than payment of charges for the value of charges for the value of work performed, and for necessary expenditures which can be established by SELLER as having been reasonably incurred prior to the time that notice of the termination is given.  In no event shall the termination charges exceed the purchase price of the EQUIPMENT agreed herein.  Any payments of the PURCHASE PRICE are not refundable but shall be credited against the amount of such charges.

39.    Plaintiff e85 terminated the agreement on July 15, 2008, therefore Defendant is entitled to its "charges for the value of work performed, and for necessary expenditures which can be established by SELLER [CIMID] as having been reasonably incurred prior to the time that notice of termination was given."

40.    After Plaintiff e85 terminated the Agreement, Defendant CIMID became aware that e85 may have assigned its interest in the Agreement to ITB, in part based on the following:

(a) ITB's Financial Statement shows ITB had the Equipment on their books as

- 16 -

late as December 31, 2007, prior to the point where Plaintiff e85 even inspected the Equipment in early 2008;

(b) ITB's Fixed Asset Detail indicates the down payment on the Equipment;

(c) ITB's website indicated that ITB owned e85's Equipment; and

(4) ITB's sales prospectus indicates that ITB had control of the Equipment.

41.    Moreover, upon information and belief, ITB attempted to negotiate a sale of the Equipment as part of a package to sell ITB to another company, Matrix Services.

42.    ITB is owned by Bold Investments, which is itself a holding company owned by Siva Limited.

43.    Plaintiff ITB was created by the principal owner of e85, Mr. Sivasankaran, to manage the construction and operations of e85.

44.    Mr. Sivasankaran is also the Chief Executive Officer of Siva Ventures.

45.    In 2007, on June 1, in New York, Mr. Sivasankaran indicated to Defendant that more equipment was would be purchased by e85 from the Defendant for the construction of the many additional ethanol plants. Mr. Sivasankaran, later  failed to advise the Defendant at time that the equipment was, in fact, no longer needed, that all ethanol operations had stopped, that metal at the ethanol plant in Wahoo, NE, was being sold at scrap value, that e85 corporate management had been released and/or fired, that the e85 corporate offices where Defendant had visited had closed, that e85 was removed from the Siva Ventures LTD corporate website, and that the Equipment was being offered for sale in the US market by ITB.

46.    Since the beginning of 2008, Plaintiff e85, Bold Investments, Siva Limited and Siva Ventures. were each aware that ITB was underfunded.

47.     Upon information and belief, it was actually Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar (as agent of Siva Limited and/or Siva Ventures.) were responsible for decisions made by ITB with respect to the Equipment.

48.     Bold Investments, Siva Limited, Siva Ventures, ITB, and Narayan Kumar controlled Plaintiff e85 such that Plaintiff e85's knowledge, actions, and omissions with respect to the Agreement and/or Equipment may be equally attributed to Bold Investments, Siva Limited, Siva Ventures., and/or ITB.

49.     In engaging in the above conduct, Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar breached their obligations to Defendant under the Agreement, failing to timely make payments and to make subsequent payments.

**WHEREFORE**, Defendant demands judgment in its favor and against Plaintiffs, Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Reasonable attorneys fees, filing fees and costs of suit;

(d)     Any further relief which the Court may deem just and proper.

## SECOND COUNTERCLAIM

### (Breach of Covenant of Good Faith and Fair Dealing)

1.     Defendant repeats and realleges each and every Paragraph of the Answer and Counterclaims as if set forth at length herein.

2.     In agreeing to enter into the contract, Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knew Defendant reasonably relied upon

Plaintiffs' continued financial good standing and ability to make timely payments in accordance with the Agreement.

3.     Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar refused to provide timely payment with full knowledge that their action or lack of action would result in Defendant's inability to properly perform under the terms of the Agreement.

4.     As a result of such breach, Defendant has suffered and will continue to suffer damage.

**WHEREFORE**, Defendant demands judgment in its favor and against Plaintiffs, Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Reasonable attorneys fees, filing fees and costs of suit;

(d)     Any further relief which the Court may deem just and proper.

## THIRD COUNTERCLAIM

### (Fraud)

1.     Defendant repeats and realleges each and every Paragraph of the Answer and Counterclaims as if set forth at length herein.

2.     Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures and Narayan Kumar knowingly concealed, suppressed or omitted facts material to the transaction at issue.  Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures and Narayan Kumar knew, at the time of their failure to make payment that Plaintiffs would not be able to or

did not find it advantageous to pay Defendant the remaining amounts pursuant to the work left to perform under the original Agreement.

      3.    Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knew or should have known that delaying payment based upon changed circumstances of Plaintiff e85's plant construction would not be adequate under the Agreement.

      4.    Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knowingly concealed or suppressed or omitted material facts regarding the fact that Plaintiff e85's United States Corporate Offices were closing.

      5.    Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knowingly concealed or suppressed or omitted material facts with the intent that Defendant would rely on such suppression, concealment, or omission to Defendant's detriment.

      6.    In engaging in the above conduct, Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar committed an unconscionable commercial practice, deception, fraud, falsity, or misrepresentation in connection with Plaintiff e85's demand for delivery of the remainder of equipment originally contemplated under the agreement without any assurance of Plaintiff e85's financial well-being or ability and/or good faith effort to make the remainder of the payments for the equipment, knowing Defendant would not find this decision commercially reasonable.

      7.    Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar breached the implied and expressed warranty that they would make payment in an appropriate manner under the Agreement and further Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knowingly withheld information

that would further affect Defendant's understanding of Plaintiff e85's ability to make timely payments.

**WHEREFORE,** Defendant demands judgment in their favor and against Plaintiffs, Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar for:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Reasonable attorney's fees, filing fees and costs of suit; and

(d)     Any further relief which the Court may deem just and proper.

## FOURTH COUNTERCLAIM

### (Misrepresentation)

1.     Defendant repeats and realleges each and every Paragraph of the Answer and Counterclaims as if set forth at length herein.

2.     At all times relevant hereto Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knew or should have known that Plaintiff e85's ethanol plants were no longer under construction.

3.     Despite such knowledge, or its obligation to obtain such knowledge, Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar negligently, carelessly, and wantonly failed to alert Defendant as to these changed circumstances and the fact that Plaintiff e85's plants had ceased construction.

4.     Plaintiff e85 affirmatively indicated to Defendant that the ethanol plants were still under construction and moving along smoothly.

5.     Based on the representations, or lack thereof, by Plaintiffs, Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar, Defendant made good faith efforts to satisfy

its obligations and complete the manufacturing work, despite a failure of Plaintiff e85 to agree to an Amendment, setting forth new payment schedules and timelines, and in light of Plaintiff e85's failure to indicate its ethanol plants were no longer being developed.

6.      Such representations, or lack thereof, were false and Plaintiffs, together with Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar knew or should have known they were false at the time that they made them.

7.      Such representations, or lack thereof, were material to Defendant's decision to continue negotiations of an Amendment and to continue production of the component parts, despite Defendant's increased exposure based on Plaintiff e85's failure to make a timely payment in February, 2008.

8.      As a direct and proximate cause of such negligent misrepresentations, upon which Defendant reasonably relied, Defendant has suffered, and will continue to suffer damages.

**WHEREFORE**, Defendants demand judgment in their favor and against Plaintiffs, Bold Investments, Siva Limited, Siva Ventures, and Narayan Kumar for:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Reasonable attorney's fees, filing fees and costs of suit; and

(d)     Any further relief which the Court may deem just and proper.

## DESIGNATION OF TRIAL COUNSEL

Defendant hereby designates John M.  Loalbo (JML-7364) as its trial counsel.

## CERTIFICATION OF NO RELATED ACTIONS

I hereby certify that to my knowledge that the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding.

**REED SMITH LLP**
136 Main Street
Princeton, New Jersey  08543-7839
Attorneys for Defendant CIMID Corporation

By:_____*/s/ John M. Loalbo*_____
          John M. Loalbo

Dated: October 9, 2009